## 29794. WOOD v. THE STATE.

HALL, Justice.

Appellant Wood appeals from a conviction and sentence of 20 years for rape. The original indictment for rape and aggravated battery was on April 8, 1974. Wood filed a formal demand for trial during the April Term of court. His trial on both counts during the July Term of court resulted in a mistrial due to the judge's determination that the jury was unable to reach a verdict. Wood was again brought to trial on the charge of rape during the October Term of the court, resulting in the verdict from which he appeals. Prior to this trial, the court granted a motion to acquit on the charge of aggravated

battery. A plea of former jeopardy on the rape charge was denied.

1. The appellant contends that his plea of former jeopardy should have been granted because the trial court abused its discretion in declaring a mistrial without the appellant's consent where the members of the jury were unable to agree upon a verdict of guilt or innocence. We disagree.

The transcript shows that the jury deliberated in excess of eleven hours in the first trial prior to the court's declaration of a mistrial. On three separate occasions the jury reported to the court that they were hopelessly deadlocked and unable to reach a decision. On the first two occasions, the court admonished the jury to reconsider their opinions in view of the evidence and the opinions of the other jurors. On the third occasion, the court polled the jury, asking each juror if it was conceivable that the jury could arrive at a decision with further deliberation. After determining that further deliberation would be fruitless, the court declared a mistrial.

This is a clear case of manifest necessity for the declaration of the mistrial lest otherwise the end of public justice be defeated. United States v. Perez, 22 U. S. (9 Wheat.) 579; *Cameron v. Caldwell,* 232 Ga. 611 (208 SE2d 441). For a discussion of the Perez test see *Jones v. State,* 232 Ga. 324 (206 SE2d 481).

2. The appellant was sworn with other witnesses at the start of the trial but elected not to testify. No witnesses were presented in his defense. He contends that the trial court committed reversible error in failing to grant a motion for mistrial based upon the following remarks of the District Attorney made during his concluding argument: "Now, Mr. Scott [appellant's trial attorney] is going to go right on into alibi. He is talking about not injecting things not in evidence. I submit to you at this time that there is no evidence of any alibi in this case even though we have heard alibi, alibi, alibi. You have heard him ask about him playing baseball. I don't see any evidence of that. I saw a whole group of witnesses sworn earlier in the trial last Tuesday evening. I saw that, but I have seen none of them testify. Now, I don't know what his argument is going to be —"

The above statement was a comment on the appellant's failure to produce evidence. It was not a comment on the appellant's failure to testify as prohibited by Code § 38-119. *Dorsey v. State,* 204 Ga. 345 (3) (49 SE2d 886). The comment here is inapposite to the one found in *Salisbury v. State,* 221 Ga. 718 (146 SE2d 776).

3. The appellant contends the trial court erred in admitting testimony of the aggravated battery for the reason that the court had previously discharged the battery count under Code § 27-1901. We disagree. " 'One of the exceptions to the rule that on prosecution for a particular crime evidence which tends to show that the defendant committed another crime wholly independent from that for which he is on trial is irrelevant and inadmissible, is where the other crime is a part of the res gestae.' " *King v. State,* 230 Ga. 581 (2) (198 SE2d 305); *Katzensky v. State,* 228 Ga. 6 (1) (183 SE2d 749); *Floyd v. State,* 143 Ga. 286 (2) (84 SE 971).

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents to Division 1 and the judgment.*

Submitted March 28, 1975 — Decided July 1, 1975 — Rehearing denied July 15, 1975.

*Robert D. Peckham, Jack H. Affleck,* for appellant.

*Harry N. Gordon, District Attorney, James Wilson Smith, Assistant District Attorney, Arthur K. Bolton, Attorney General, Lois F. Oakley, Deputy Assistant Attorney General,* for appellee.

Gunter, Justice, dissenting.

United States v. Perez, 22 U. S. (9 Wheat.) 579 (1824), has been consistently cited for the proposition that *manifest necessity to meet the ends of public justice* is present when a criminal trial is aborted by the inability of the jury to reach a verdict of guilty or not guilty; and on the basis of this premise, a mistrial may be declared and the accused re-tried on the same criminal charge before another jury without offending the constitutional principle of double jeopardy. I dissented in *Cameron v. Caldwell,* 232 Ga. 611 (208 SE2d 441) (1974), and said: "Such a procedure, in my opinion, makes the double

jeopardy provision in the Fifth Amendment and the due process provision in the Fourteenth Amendment, in combination, meaningless." P. 613.

Perez was a federal case, and the Due Process Clause of the Fifth Amendment was applicable to it. The Fourteenth Amendment was not in existence in 1824 when Perez was decided. However, I do not believe that "due process of law" pursuant to the Fifth Amendment was considered in Perez by the court, or if it was considered, the due process concept in 1824 had no legal resemblance to the present-day concept of procedural due process of law mandated by the Fourteenth Amendment.

The state must prove an accused guilty beyond a reasonable doubt. The reasonable-doubt standard required in criminal cases has now achieved constitutional stature: "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U. S. 358, 364.

In Green v. United States, 355 U. S. 184 (1957), the accused had been tried for first-degree murder; the jury did not return a verdict on that charge; but the jury did return a verdict of guilty for second-degree murder. The accused secured a reversal of the second-degree murder conviction, he was granted a new trial, the government tried him again for first-degree murder over his objection, he was convicted at the second trial of first-degree murder, and his conviction for first-degree murder was set aside by the Supreme Court as "contrary to both the letter and spirit of the Fifth Amendment." P. 198.

Writing for the court in Green, Justice Black said: "Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gauntlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. But the

result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense." Pp. 190, 191.

In Green, Justice Black also said: "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. . . Moreover it is not even essential that a verdict of guilt or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge. This court, as well as most others, has taken the position that a defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again." Pp. 187, 188.

Green means to me that since the jury did not return a verdict on the first-degree murder charge at the first trial the government had failed to comply with the reasonable-doubt standard imposed upon it by the Constitution, the accused had been exonerated on that charge, and the due process principle in combination with the double jeopardy principle prohibited his re-trial for first-degree murder.

In Price v. Georgia, 398 U. S. 323 (1969), a second conviction was affirmed by the Georgia courts and set aside by the Supreme Court. The Georgia courts had rejected Green in favor of reliance on Brantley v. State, 132 Ga. 573 (64 SE 676) (1909), affirmed, 217 U. S. 284 (1910).

In following Green and distinguishing *Brantley,* Chief Justice Burger said: "The Brantley case was decided by this court at a time when, although the court was actively developing an explication of federal double jeopardy doctrines based on the Fifth Amendment, it took a very restricted approach in reviewing state court decisions. While the Brantley holding may have had some vitality at the time the Georgia courts rendered their decisions in this case, it is no longer a viable authority and must now be deemed to have been overruled by subsequent decisions of this court." Footnote 9 (p. 330) then refers to Benton v. Maryland, 395 U. S. 784 (1969). The Chief Justice also said: "The rationale of the Green holding applies here. The concept of continuing jeopardy implicit in the Ball case would allow petitioner's retrial for voluntary manslaughter after his first conviction for that offense had been reversed. But, as the Kepner and Green cases illustrate, this court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge. There is no relevant factual distinction between this case and Green v. United States. Although the petitioner was not convicted of the greater charge on retrial, whereas Green was, the risk of conviction on the greater charge was the same in both cases, and the Double Jeopardy Clause of the Fifth Amendment is written in terms of potential or risk of trial and conviction, not punishment." P. 329.

In United States v. Jorn, 400 U. S. 470 (1970), the Supreme Court held that the appellee's reprosecution would violate the double jeopardy provision of the Fifth Amendment. Mr. Justice Harlan, writing for the court, referred to and quoted the Perez standard of "manifest necessity." At the same time he said: "Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." P. 486.

I am aware that in Mr. Justice Harlan's opinion and in Mr. Justice Stewart's dissenting opinion in Jorn the perfunctory statements are made that the declaration of a mistrial in hung-jury cases does not invoke the double-jeopardy principle. These statements cite Perez in a rote manner and, as stated before, I do not believe that the Perez standard took into consideration present-day procedural due process requirements.

Breed v. Jones, —U. S.— (95 SC 1779, 44 LE2d 346), applied the double jeopardy principle to a juvenile court adjudication. In that case Chief Justice Burger said: "As we have observed, the risk to which the term jeopardy refers is that traditionally associated with 'actions intended to authorize criminal punishment to vindicate public justice.' United States ex rel. Marcus v. Hess, [317 U. S. 537] supra, at 548-549 [63 SC 379, 87 LE 443]. Because of its purpose and potential consequences, and the nature and resources of the state, such a proceeding imposes heavy pressures and burdens — psychological, physical, and financial — on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once 'for the same offense.' " P. 10, Slip Opinion.

In the case at bar the appellant at his first trial was fully and completely tried for the crime of rape; that trial resulted in a hung jury; after approximately eleven hours of deliberation the jury, all twelve of them person by person, announced to the trial judge that it could not reach a verdict; and the trial judge then aborted the trial and dismissed the jury without the consent of the accused. My view is that the appellant was forced to run the gauntlet once on the charge of rape, the state fully presented its evidence against him, but the jury refused to convict him. I say that in this case there were no "unforeseeable circumstances" that would justify aborting this trial by the declaration of a mistrial that would permit re-trial of the appellant on the same charge. The fact that twelve jurors may not agree on a verdict in a criminal case is a circumstance that is foreseen by both the state and accused in every criminal trial. After a full and complete effort by the state to convict, a hung jury means to me that the state was unable to convict, that the state did not carry

its constitutional burden. In such a situation there is no "manifest necessity" to declare a mistrial so that the ends of public justice will be met. To allow a re-trial on the same charge in such a situation is to ignore the constitutional principles of double jeopardy and due process of law.

How many times may the state through its trial judges abort trials of the same defendant on the same charge and permit the state to re-try him? If the first hung-jury trial may be aborted, it is only logical to say that so can the second, third, or fourth such trial. And our constitutional principle is "double jeopardy," not "triple, quadruple, or multiple" jeopardy.

I repeat, to hold that a hung jury in a criminal trial is the equivalent of "manifest necessity" for the declaration of a mistrial that would permit the re-trial of an accused is to make the double jeopardy provision in the Fifth Amendment and the due process provision in the Fourteenth Amendment, in combination, meaningless.

It may be that the failure of the jury to reach a verdict in the first trial was against the vast weight of the evidence presented by the state; it may be that the failure of the jury to reach a verdict was an aberration; on the other hand, it may be that the jury stood 11-1 for acquittal or stood deadlocked at 6-6; but in any event, that is the price we pay in conducting a system of criminal justice governed by principles mandated by a written Constitution.

I think the second trial of the appellant was unconstitutionally conducted, that he is serving a sentence that was unconstitutionally imposed, and I would reverse the conviction.

I respectfully dissent.