## 33807. BURGER v. THE STATE.

JORDAN, Justice.

Christopher A. Burger and Thomas D. Stevens were indicted for the murder of Roger E. Honeycutt. Tried separately, both were convicted and sentenced to death. For Stevens' appeal and additional facts, see *Stevens v. State,* 242 Ga. 34.

The evidence produced on Burger's trial established the following facts:

On the evening of Sept. 4, 1977, Burger and Stevens, both soldiers in the U. S. Army stationed at Ft. Stewart, Georgia, were drinking beer in the club on the reservation when they decided to rob a cab. They procured a butcher knife and a sharpening tool from the mess hall and called a cab. Meanwhile they talked to another soldier, James Botsford, and agreed to come to the Savannah Airport to pick him up and bring him back to the base.

Thereafter, around 10 p.m., a cab driven by the victim Honeycutt, also a soldier driving a cab part-time, arrived at the base and picked up Burger and Stevens. En route to the airport they threatened the driver with their weapons, forced him off the road and robbed him of his money (sixteen dollars). Honeycutt was put in the back seat, and they resumed the trip to the airport with Burger driving the vehicle.

Stevens then made Honeycutt disrobe, his clothes being thrown from the vehicle after being searched for more money. The victim's hands were then tied and he

was forced to commit acts of sodomy with Stevens. Honeycutt was then placed nude in the trunk of the cab with his hands still tied behind him.

Burger and Stevens proceeded to the airport, picked up Private Botsford and returned him to the base. En route they told Botsford what they had done. Botsford asked them not to kill Honeycutt and they agreed that they would not. They drove back to Jesup, stopped for milk and sandwiches, later ran a stop sign and were followed by police for a short while. They then drove to a "borrow pit" filled with water which Burger knew about. They wiped their fingerprints from the car and threw the C. B. radio into some bushes. Burger then raised the trunk lid and asked Honeycutt if he was alright. Honeycutt indicated that he was and Burger closed the trunk. Burger then started the car and drove it into the pond, jumping for safety as it entered the water. The victim was still alive at this time and the autopsy showed drowning as the cause of death. The victim was later found nude in the trunk of the car when it was pulled from the pond.

Burger and Stevens then returned to the army base. They contacted Botsford the next day to see if he had told anyone about the night before. He told them he had not.

On September 12, 1977, Botsford, after learning that the soldier-cab driver was still missing, voluntarily went to the state patrol and the Army CID and related what he knew to them. Burger and Stevens were picked up by military police. Burger initially denied any knowledge of the missing cab but later agreed to tell about the whole affair and signed a confession.

1. We have examined the voir dire transcript and find no error in the qualification of the jurors empaneled to try the appellant.

2. Appellant claims error because the trial court refused his motion for continuance on grounds that a supplemental list of three rebuttal witnesses was furnished defense counsel just prior to trial.

The record shows that in response to a demand for a list of witnesses on November 28, 1977, the state furnished a list of some 30 witnesses on November 30, 1977, and a supplemental list on December 1, and December 9, 1977. On January 23, 1978, just prior to trial

the state filed a supplemental list of 3 rebuttal witnesses. Of a total of 36 witnesses on the lists, 15 were subpoenaed and 11 testified. The rebuttal witnesses were not called and did not testify. Under these circumstances no possible harm has been shown and the trial court did not abuse its discretion in overruling the motion for continuance. See *Chenault v. State,* 234 Ga. 216, 220 (215 SE2d 223) (1975); *Nunnally v. State,* 235 Ga. 693 (13) (221 SE2d 547) (1975).

3. Appellant insists that the trial court erred in allowing into evidence the statement by appellant to investigating officers on the ground that it was not freely and voluntarily made due to his age (17), limited education, low intelligence quota, being held incommunicado, and insufficient Miranda warning.

The evidence developed at the Jackson-Denno hearing showed that before interrogation the appellant was advised by a special agent of the United States Army that he was investigating the missing cab and had received information that he had been seen driving the cab. He then informed the appellant of his rights under Article XXXI, Uniform Code of Military Justice, and under Miranda. The agent then testified that: "I informed him that he had a right to talk with a lawyer, before or after questioning, or have a lawyer present with him during questioning. I informed him that this lawyer could be a civilian lawyer at his own expense, or a military lawyer appointed for him at no expense to him."

The agent testified that Burger replied that he understood his rights, that he did not want a lawyer, and that he would discuss the offense under investigation. Burger then signed a written waiver on the form submitted to him and made a statement which was later reduced to writing and signed by him.

Appellant strongly contends a violation of the Miranda rule because appellant was not informed that he had a right to appointed *civilian* counsel, as opposed to appointed *military* counsel. We do not agree with this contention. A reading of Miranda v. Arizona, 384 U. S. 436 (1966) shows an accused has a right to the presence of an attorney, either retained or appointed. This requirement was met when the appellant was clearly informed of his right to counsel, either appointed or

retained, prior to questioning. The fact that the proffered attorney was military did not vitiate this right. At the time of the investigation it was not clear whether military or civilian jurisdiction was involved. All personnel involved were members of the military and the situs of the crime, if any, had not been determined at that time. As soon as he was turned over to civilian authorities he was again given a full Miranda warning and he again signed a waiver.

While appellant presented the testimony of Dr. Joseph O'Haire in support of his low mental capacity (I. Q. of 82), the doctor testified that appellant knew right from wrong and was able to appreciate the ramifications of his confession. Other evidence indicated that the appellant had been married twice, scored 99 on his army entrance examination, had completed basic training and Armored Tank Training School and qualified as a tank driver.

We have carefully examined the entire transcript of the Jackson-Denno hearing and conclude that the state amply met all the criteria for a free and voluntary waiver of counsel as set forth in *Riley v. State,* 237 Ga. 124 (226 SE2d 922) (1976) and *Williams v. State,* 238 Ga. 298 (1) (232 SE2d 535) (1977). The trial court did not err in allowing the confession into evidence. *Pierce v. State,* 235 Ga. 237, 239 (219 SE2d 158) (1975).

4. Having ruled that the confession was admissible into evidence, appellant's enumeration of errors 2, 4, 5, 6, and 7 are without merit. These enumerations are based on the admission of a certain photograph and other evidence obtained as a result of appellant's confession on the theory that they were "fruits of a poisoned tree." Appellant especially objects to the introduction of a photograph made of the victim's decomposed body upon removal from the trunk of the car. We find no error in the admission of such a photo showing the location and position of the body in the trunk at the time it was found.

5. Appellant's enumeration of error 8 complains of the overruling of his motion for a directed verdict based on the contention that the state did not produce sufficient evidence of the identity of the body found in the trunk of the car. There was ample evidence, both direct and circumstantial, that the body was that of Roger

Honeycutt. This enumeration is without merit.

6. Likewise, enumeration of error 8 complaining of the overruling of his motion for new trial based on the general grounds is without merit.

7. Appellant contends that the trial court erred in failing to require the state to produce to the defendant the statement of a key witness, Botsford, pursuant to a notice to produce under Code Ann. § 38-801, relying on *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976).

The record shows that prior to trial the state furnished the defendant with "a summary of witnesses' names, addresses, and a brief of what they might testify." In addition the record discloses that an in camera inspection was made by the trial court and the state was not required to furnish additional information to the defendant. No further objection was made in the trial court. The witness Botsford testified at the trial and was subjected to a thorough cross examination by the defendant.

Under these circumstances we conclude that the defendant has failed to show how the alleged suppressed evidence affected the outcome of the trial as required by Brady v. Maryland, 373 U. S. 83 (1963). As we said in *Wisdom v. State,* 234 Ga. 650, 652 (217 SE2d 244) (1975), the appellant would still have the burden of "showing that the denial of these statements to him so impaired his defense that he was denied a fair trial within the meaning of the Brady rule." See *Hicks v. State,* 232 Ga. 393, 396 (207 SE2d 30) (1974).

8. Appellant next contends that the evidence of sodomy committed upon the victim by his co-indictee was not relevant or material to the indictment for murder and was not a part of the same criminal transaction, relying on *Bacon v. State,* 209 Ga. 261 (71 SE2d 615) (1952).

"Generally, on a prosecution for a particular crime, evidence of another and distinct crime wholly independent from that for which one is on trial is inadmissible; but there are exceptions to this rule. One is, if the separate crime was committed as a part of the same transaction as that for which the accused is being tried, and forms a part of the res gestae." *Hill v. State,* 201 Ga. 300, 303 (39 SE2d 675) (1946).

The evidence in this case shows that the offenses of robbery, kidnapping, sodomy, and murder were all part of one criminal transaction entered into jointly and in concert by the appellant and his co-indictee. Under the facts of this case the trial court did not err in allowing into evidence the acts of sodomy committed during the criminal transaction resulting in the murder of the victim.

9. Enumerations of error 9, 10, and 11 are without merit.

10. Enumerations of error 12 and 13 allege failure of the trial court in the sentencing phase of the trial to charge on mitigating circumstances and failure to make clear the jury's authority to recommend a life sentence even though they found statutory aggravating circumstances.

After a thorough review of the charge in the sentencing phase of the trial, we conclude that it does not meet the requirements set forth in *Fleming v. State,* 240 Ga. 142, 147 (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977); and *Spivey v. State,* 241 Ga. 477 (1978). We therefore order a new trial as to sentencing under proper instructions to the jury.

*Judgment of conviction affirmed, and new trial ordered as to sentencing. All the Justices concur.*

ARGUED JULY 10, 1978 — DECIDED SEPTEMBER 5, 1978.

*Gibbs, Leaphart & Smith, T. Alvin Leaphart,* for appellant.

*Glenn Thomas, Jr., District Attorney, John B. Johnson, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Staff Assistant Attorney General,* for appellee.