## 66957. ATKINSON v. THE STATE.

CARLEY, Judge.

Appellant was convicted of theft by taking. He appeals from the judgment of conviction entered on the guilty verdict and from the sentence imposed by the court.

1. The judgment of conviction and sentence were entered on May 27, 1982. Appellant's notice of appeal was filed the very next day, May 28, 1982. Appellant then filed a motion for a new trial on Monday, June 28, 1982, the last day on which the filing of such a motion would otherwise have been timely. Appellant filed nothing in

this court to apprise us that, subsequent to the filing of his notice of appeal, he had filed a motion for new trial in the lower court. Pursuant to appellant's notice of appeal, his case has now reached this court for resolution. No written order making a final disposition of appellant's motion for new trial has ever been secured and entered in the case. Appellant's first enumeration of error is the assertion that, under the present posture, the case must be remanded to the trial court for a final disposition of his motion for new trial.

In *Housing Auth. v. Geter*, 252 Ga. 196, 197 (312 SE2d 309) (1984), our Supreme Court held: "Even though a notice of appeal may divest the trial court of jurisdiction, we conclude that such divestiture does not become effective during the period in which a motion for new trial may be filed. In the event a motion for new trial is timely filed as provided in OCGA § 5-5-40 (Code Ann. § 70-301), the effectiveness of the divestiture of jurisdiction is then delayed until the motion for new trial is ruled upon and a notice of appeal to the ruling has been filed or the period for appealing the ruling has expired." Under a literal interpretation of this language from *Geter*, it would appear that jurisdiction over the instant case would still lie with the trial court, pursuant to appellant's motion for new trial, and not with this court, pursuant to appellant's notice of appeal.

However, *Housing Auth. v. Geter*, supra, is factually distinguishable from the instant case. In *Geter*, the Supreme Court dealt with a situation wherein the party in whose favor a judgment had been entered, and who was therefore the ostensible "winning" party initiated post-judgment review by filing a notice of appeal, with the result that the party against whom the judgment had been entered and therefore the ostensible "losing" party in the case was left "facing the dilemma of choosing an appropriate means of appealing the judgment of the trial court." *Housing Auth. v. Geter*, supra at 196. On these facts, the Supreme Court held that a previously filed notice of appeal will not divest the trial court of jurisdiction to rule upon a timely filed subsequent motion for new trial. " ' "Before a verdict becomes final it should, where the losing party requires it by a motion for new trial, receive the approval of the mind and conscience of the trial judge . . ." ' [Cit.]" *Housing Auth. v. Geter*, supra at 197. Thus, the losing party should not be deprived of his right to secure a ruling on his timely filed motion for new trial simply because the winning party's notice of appeal has been filed on an earlier date. The *Geter* procedure "will serve to . . . discourage races to the courthouse for the purpose of paying legal slapjack with notices and motions." *Housing Auth. v. Geter*, supra at 197.

It should be readily apparent that the application of the *Geter* procedure in a case wherein the *same* party has filed *both* the original notice of appeal and the subsequent motion for new trial has the po-

tential for encouraging that very "legal slapjack with notices and motions" that the Supreme Court has condemned. To use the instant case as an example, appellant urges that his motion for new trial, which he apparently never diligently pursued below, now serves as an impediment to this court's jurisdiction over his appeal, which he himself invoked by filing a notice of appeal. Even assuming that the literal language of the factually distinguishable *Geter* decision could, in the first instance, serve as authority for the dilatory assertion that appellant now makes, we have no hesitancy in holding that there has been a waiver of whatever right appellant may otherwise have had to delay this court's resolution of the instant appeal. As *Geter* itself recognizes, "[t]he proper means of placing [the] issue [of a delay in the effectiveness of the divestiture of a trial court's jurisdiction effectuated by the filing of a timely notice of appeal] would be to file a motion for a stay of the direct appeal with the Court of Appeals, and if the stay [is] denied, then to petition for writ of certiorari." *Housing Auth. v. Geter*, supra at 197. Appellant filed no motion for a stay of the instant direct appeal. Instead, his direct appeal having reached this court, appellant now contends that the mere fact that his motion for new trial was subsequently filed is, in and of itself, sufficient to delay the effectiveness of both the trial court's divestiture of jurisdiction over the case and the consequent investiture of that jurisdiction upon this court. We do not construe *Geter* as authorizing or countenancing such a delay. Accordingly, we hold that this court has jurisdiction to rule on the issues raised in appellant's appeal and that the case need not be remanded to the trial court for the entry of an order on appellant's motion for new trial.

2. At trial, the state's evidence established that two truck tires had been stolen from the premises of a tire distribution center which were enclosed by a ten-foot cyclone fence. The theft had been accomplished by cutting the fence with a pair of bolt cutters. On the evening of the theft, the two stolen tires, as well as a pair of bolt cutters, were found in appellant's possession. The state did not offer the bolt cutters into evidence at trial.

Appellant's defense was that he had purchased the tires at a tavern. Appellant also called Mr. Leon Bedford, his employer, as a defense witness. Mr. Bedford testified that he owned the bolt cutters which had been found in appellant's possession, and that they were utilized in the course of appellant's employment to cut one-half inch "steel rebar." At the conclusion of appellant's direct examination of Mr. Bedford, a bench conference was held. Appellant's counsel then requested that Mr. Bedford bring into court a pair of bolt cutters similar to those which had been found in appellant's possession. The trial court then requested that Mr. Bedford "bring some half-inch rebar back with you, too." Appellant's counsel ended this colloquy by

stating to Mr. Bedford, "That's all. Thank you. That's all I have except get those things and bring them in."

When Mr. Bedford subsequently returned to the witness stand, counsel for appellant stated that the trial court "go ahead and inquire of this witness what it would like to know." A demonstration then followed in which Mr. Bedford unsuccessfully attempted to cut the one-half inch steel rebar with the bolt cutters that had been brought with him. At no time did appellant object to any aspect of the demonstration.

On appeal, however, appellant asserts that it was error to allow Mr. Bedford to make this courtroom demonstration. " 'Experiments made in and out of court sometimes make a practical demonstration of the question in issue, and are often the best evidence in elucidating the truth. It is necessarily largely *within the discretion of the trial court* to determine whether the testimony shows that the experiments were made under such conditions as to fairly illustrate the point in issue.' . . . (Emphasis supplied.) [Cit.]" *Miller v. State*, 53 Ga. App. 275 (1) (185 SE 372) (1936). The purpose of the demonstration was to elucidate Mr. Bedford's testimony which had attributed an ostensibly legitimate employment purpose to appellant's possession of the bolt cutters. Appellant does not contend, nor is there any evidence to indicate that the experiment did not fairly illustrate the question of whether the bolt cutters could in fact be employed as Mr. Bedford had testified. It was established that the bolt cutters were of the same type found in appellant's car.

Although appellant contends that the trial court erred in initiating and in requiring that the experiment be conducted, the record indicates that it was appellant's counsel who, without any objection, made the initial request that Mr. Bedford produce the pair of bolt cutters. Only then did the trial court ask the witness several related questions with the result that the experiment was subsequently conducted at the request of appellant's counsel. "The trial judge has the right to propound a question or a series of questions to any witness for the purpose of developing fully the truth of the case; and the extent to which the examination conducted by the court shall go is a matter within his discretion. And a lengthy examination by the court of a witness called by either party will not be cause for a new trial, even though some of the questions propounded by the court were leading in character, unless the court, during the examination of the witness by himself, expresses or intimates an opinion on the facts of the case, or as to what has or has not been proved, or the examination takes such course as to become argumentative in character." *Gillis v. Bowman*, 132 Ga. 762 (64 SE 1096) (1909). See also OCGA § 9-10-7. Our review of the record reveals that the trial court in no way intimated any opinion concerning Mr. Bedford's testimony or the experi-

ment, nor was the trial court's questioning argumentative in character. Furthermore, appellant made no objection or motion for mistrial as a result of the court's questions or any aspect of the demonstration, and has thus waived his right to raise any such objection on appeal. *Kapplin v. Seiden*, 109 Ga. App. 586, 590 (137 SE2d 55) (1964); *White v. State*, 146 Ga. App. 810 (247 SE2d 536) (1978).

Appellant's final contention is that the demonstration erroneously shifted the burden of proof to him. Appellant offers no explanation of how the demonstration resulted in a shift of the burden of proof. We find nothing to indicate that such a shift occurred. The demonstration was conducted only to elucidate Mr. Bedford's testimony that the bolt cutters could be used to cut one-half inch steel rebar. The trial court did not intimate to the jury that in order to establish his innocence, appellant was required to prove that the cutters could do so. The trial court charged the jury that the burden of proof was upon the state to prove each element of the charge made in the indictment beyond a reasonable doubt, and that appellant was presumed innocent unless every element was so proved. The jury was further charged that it should not intimate that any of the trial court's rulings was an expression of opinion. We find no error. See generally *Carson v. State*, 241 Ga. 622, 623 (2) (247 SE2d 68) (1978); *Griffin v. State*, 148 Ga. App. 311 (2) (251 SE2d 161) (1978).

3. The final enumeration asserts that appellant's character was erroneously placed into evidence by the trial court's admission of certain testimony. When appellant objected at trial, the state was instructed to discontinue further pursuit of the line of questioning but the testimony which had already been given was ruled admissible for a specific limited purpose. Appellant raised no additional objections.

" 'Where evidence is objected to and the court, in response to the objection, states that he does not admit it generally, but admits it for a special purpose, and counsel for the objecting party, upon ascertaining the purpose for which it is to be admitted, makes no further objection to it, no valid assignment of error can be based on the court's act in admitting it.' [Cit.]" *Sellers v. White*, 104 Ga. App. 148, 149 (3) (121 SE2d 385) (1961).

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED MARCH 13, 1984.

*M. Shannon Feeney*, for appellant.
*Robert E. Keller, District Attorney, Michael D. Anderson, Assistant District Attorney*, for appellee.