71751. PRESLEY v. THE STATE.
(340 SE2d 253)

BIRDSONG, Presiding Judge.

Benjamin Presley appeals his conviction for violating the Georgia Controlled Substances Act by selling two pounds of marijuana to Fred Mays, a GBI undercover agent. Mays, in the company of a black male known as Jo-Jo, went to the Green Acres Club in Bristol, Georgia, on the evening of July 20, 1984. Presley owned and operated the club. At approximately 7:30 to 7:45 p.m., Mays asked Presley to sell him two pounds of marijuana. Presley quoted Mays a price of $550 per pound but said he did not have that much and Mays would have to come back later. At that time Jo-Jo asked Presley to sell him a "nickel" bag of marijuana. They went to Presley's truck and the de-

fendant withdrew a large plastic bag from the truck which contained a leafy material and handed Jo-Jo some of its contents. Jo-Jo gave Presley $5. Mays dropped Jo-Jo off at a house in town and contacted GBI agents Abernathy and Yeomans to assist him. Abernathy hid in the back of Mays' hatchback car and they returned to the Green Acres Club. Mays asked Presley if he had the marijuana. Presley said it had not arrived, "to wait. . . ." A man by the name of Clyde Davis approached them holding a brown paper bag. They went to Mays' car and he opened the hatchback. Abernathy exited from the hatchback and Presley and Davis were arrested. Abernathy advised Presley of his *Miranda* rights in front of the club at the time of the arrest but did not take a statement. Approximately 30-40 black people had gathered and the two white GBI agents took their two black defendants to the local jail.

The following day, Abernathy again advised Presley of his rights. Presley said that he understood them and signed a waiver and told Abernathy that after Mays ordered the two pounds of marijuana he contacted "the man from Hazlehurst" and asked him for the marijuana. They met on the road behind his club and Davis was given a brown paper bag containing the drugs. Davis walked back to the club while Presley drove his vehicle back to the front. The transaction with Mays then followed which resulted in their arrest after the transfer of the bag to Mays. *Held*:

1. Error is enumerated in allowing the state to introduce the defendant's statement taken on July 21st. The defendant claims he asserted his right to remain silent on the night of July 20th and Abernathy initiated a second interview on the following day. Agent Abernathy said he did not conduct an interview of the defendant in front of the 30-40 black people at the Green Acres Club. Counsel asked: "He chose to remain silent, didn't he? A. That's correct." This same type of question was repeated several times to emphasize that the defendant "chose" to remain silent after being given the first warning, and the same officer initiated a resumption of the questioning of the defendant the following day. Counsel argues that this is a violation of *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694), for the state must scrupulously honor a suspect's right to remain silent. *Michigan v. Mosley*, 423 U. S. 96 (96 SC 321, 46 LE2d 313).

Although counsel was successful in obtaining an answer to his question that the defendant "chose to remain silent," this type answer is susceptible of two different meanings. One, the suspect stated that he would remain silent, or two, the suspect said nothing, thereby demonstrating he had elected to remain silent. Agent Abernathy told defendant's counsel: "He just did not say anything. . . . Q. . . . it was your impression that Presley chose to remain silent that night, wasn't it? A. . . . I don't agree with what you're saying, Mr. Solomon. I

mean, I read the subject his rights. He didn't say anything. . . . I knew that I was not going to attempt to interview, here, anyone with a large group of people." The court ruled: "Granted [the defendant] might have been silent on the night of the 20th, but from the testimony that has been given here today, I don't find that that was an exercise of his right to remain silent. It was just that at that point there was no interview or he made no statement."

Determinations of fact, including credibility issues are questions which must be resolved by the fact finder, and appellate courts must accept such determination on review unless they are clearly erroneous. *Findley v. State*, 251 Ga. 222, 225 (304 SE2d 898). The evidence supports the trial court's finding that the defendant never invoked his right to remain silent following receipt of his *Miranda* rights on the evening of July 20th, and no interview was attempted. The first interview and decision by the defendant on his *Miranda* rights was made on July 21st, the following day. The findings of the trial court are not clearly erroneous. This enumeration is without merit.

2. Presley alleges the admission in evidence of the sale of marijuana to Jo-Jo was prejudicial error, because (a) it placed his character in issue, and (b) since the state did not notify the court or the defendant prior to trial of its intent to introduce a prior similar transaction, it was inadmissible under Rule 31.3 of the Uniform Superior Court Rules.

(a) "The general rule is, that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible. [Cits.] However, where such evidence of other criminal transactions is a part of the res gestae or tends to show motive, or to show a course of conduct pointing toward and leading to the crime or to the concealment of the crime or the identity of the perpetrator thereof, such evidence is admissible as an exception to the general rule." *Spurlin v. State*, 228 Ga. 2, 5 (183 SE2d 765). In addition, as was noted in *Burger v. State*, 242 Ga. 28, 32 (247 SE2d 834), "if the separate crime was committed as a part of the same transaction as that for which the accused is being tried, and forms a part of the res gestae" it is admissible as an exception. Accord *Richards v. State*, 157 Ga. App. 601 (1) (278 SE2d 63). Here, the commission of the separate offense occurred in the presence of the police undercover agent at the time he was negotiating the purchase of the marijuana which formed the basis for the offense for which defendant was tried. "Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity,

motive, plan, scheme, bent of mind, or course of conduct." *State v. Johnson*, 246 Ga. 654, 655 (272 SE2d 321).

The similar offense in the instant case was a part of the res gestae and was observed during the initial part of the transaction and is sufficiently similar in nature to be admissible to show identity, motive, and course of conduct. *Bostic v. State*, 173 Ga. App. 494, 496 (326 SE2d 849). The fact that it incidentally places defendant's character in issue does not render it inadmissible. *Lenear v. State*, 239 Ga. 617, 619 (238 SE2d 407); *Mosley v. State*, 150 Ga. App. 802, 804 (258 SE2d 608).

(b) Our new Uniform Superior Court Rules (effective July 1, 1985) provide that if the prosecution intends to present evidence of similar transactions to those charged it may notify the court prior to trial and request a ruling. Rule 31.3 (A). Such notice shall be served on the defendant's counsel. Rule 31.3 (B). If prior approval is not obtained, evidence of similar transactions shall be inadmissible. Rule 31.3 (C). However, there is an exception. "Nothing in this rule is intended to prohibit the state from introducing evidence of similar transactions or occurrences which are lesser included alleged offenses of the charge being tried, or are immediately related in time and place to the charge being tried, as part of a single, continuous transaction." Rule 31.3 (E).

The evidence here of the similar transaction occurred during the first phase of the commission of the offense charged and is sufficiently related in time and place, and is a part of one continuing transaction, and a part of the res gestae, so as to come within the parameters of Rule 31.3 (E).

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED JANUARY 30, 1986.

*M. Theodore Solomon II, William J. Edgar,* for appellant.
*Harry D. Dixon, Jr., District Attorney, George E. Barnhill, Assistant District Attorney,* for appellee.