## 75968. YARBROUGH v. THE STATE.
(368 SE2d 802)

BIRDSONG, Chief Judge.

Jessie Lee Yarbrough, the appellant, brings this appeal from his conviction of two counts of kidnapping, one count of aggravated battery by maliciously causing bodily harm to Melvin Turney with a knife, thereby causing the loss of a kidney and limited use of his left leg, one count of criminal trespass, and one count of possession of a firearm during the commission of a crime.

From the evidence offered during trial, the jury was authorized to find that Yarbrough entered the business premises of Melvin Turney in Valdosta, Georgia, on December 29, 1986, and pointed a pistol at him demanding that Turney take him to Turney's house where Yarbrough's wife Shirley and their two children were then living. Turney's secretary, Jean Courson, came from her office and she also was confronted by Yarbrough with a gun, saying: "This is kidnap [sic] . . . you both are going with me . . . and let me warn you that I have killed two people, and I will not hesitate to do it again." Yarbrough pulled the phone out of the wall. Turney saw something wrapped around Yarbrough's waist, and Yarbrough told him: "I've got a bomb on me. If I fall down, it will blow the house up, so don't try anything." Turney, Courson and Yarbrough drove to Turney's house where his

granddaughter, Shirley Yarbrough, and her two daughters had been staying since they left Yarbrough's home in Gulfport, Mississippi.

When Yarbrough entered Turney's home, he exhibited two guns and informed the people there that he had attempted to get the church to administer last rites to him but they had refused, so he was going to give himself last rites. He had his wife kneel down with him and they said the Lord's Prayer together and then Yarbrough crossed himself. Following this "he pulled out a hit list that he had, a piece of paper with all our names on it . . . there [were] fourteen names, [Turney's] whole family, including . . . great-grandchildren, his children, all of them, and there was no doubt in [Turney's] mind what he was intending to do at that point." Yarbrough's wife went to him, hugged him and kissed him, and then grabbed his two guns and told him "not to move, [she] would kill him if he moved a muscle." Yarbrough picked up one of their children and placed the child between himself and his wife. Mrs. Yarbrough gave one of the guns to Turney. Yarbrough wrestled with his wife for the gun and Turney used his gun to strike Yarbrough over the head. Mrs. Courson put a headlock on Yarbrough and Mrs. Turney started striking Yarbrough on the head with her fist. Yarbrough removed a knife from his clothing and stabbed Turney several times in the side and back. Mrs. Courson ran to a nearby house and asked the neighbor to call the police. Mrs. Yarbrough ran into the street and stopped a passing motorist, a serviceman from the Air Force base. He stayed with her and waited for Yarbrough while another motorist called the police. The police came and Yarbrough surrendered himself to them.

Yarbrough testified that he talked to Turney at his store to get him to take him to his wife and children and that he did not display any weapon. Courson and Turney voluntarily accompanied him to Turney's home. He intended to ask his wife to come home, or let him take the children for a visit, and in the event of refusal he had taken only one gun with him and he was going to kill himself. After his wife refused to join him, he took 16 "Halycin" pills, prescribed for him by his doctor for his heart. The pills should have killed him, but he took his gun out in case the pills did not take effect. After taking his gun out, he was struck from behind, apparently by Turney with a gun, and he could remember nothing more. He did not remember stabbing Turney. The jury found Yarbrough guilty of five of the eight counts charged. He has filed this appeal. *Held*:

Although appellant has filed six separate enumerations of error, each addresses the same issue — the admission in evidence of the so-called "hit list." Appellant has failed to follow the Rules of this court and has combined his argument in one continuous sequence as to all enumerations. See Rule 15 (c) (1), Rules of the Court of Appeals; see also *Ehlers v. Schwall & Heuett*, 177 Ga. App. 548, 550 (340 SE2d

207).

The State introduced testimony of the "hit list" because Yarbrough read it to his victims. Mrs. Courson said the appellant told her she was a nice lady but "he got out a hit list out of his pocket, and he began to read the names . . . he included me as number one" and said "I'm going to get them." Turney testified that Yarbrough explained that he "didn't have Mrs. Courson's name on the list . . . but she got mixed up accidentally . . . [she's] in here now and there's nothing I can do." Yarbrough's wife also testified to his reading "a hit list because it had every name of my family on it. . . . He read off about fourteen names. . . ." Yarbrough told her "we were all going to be blown up, not to move, he would shoot us . . . and that [he] had cut the bullets and had put cyanide in them, so even if it didn't [sic] graze him he was going to be dead anyway one way or the other. . . ." This testimony of the witnesses involved statements made by Yarbrough during the commission of these offenses and was an integral part of the res gestae. See OCGA § 24-3-3.

Generally, in the prosecution for a particular offense, evidence of another distinct crime, wholly independent from that which the accused is on trial is inadmissible, but if the allegedly separate offense was a part of the same incident for which the accused is being tried and forms a part of the res gestae, it is admissible. *Burger v. State*, 242 Ga. 28, 32 (247 SE2d 834); *Wood v. State*, 234 Ga. 758, 760 (218 SE2d 47); *King v. State*, 230 Ga. 581 (2) (198 SE2d 305); *Richards v. State*, 157 Ga. App. 601 (1) (278 SE2d 63).

The fact that such part of the res gestae incidentally placed defendant's character in issue does not render it inadmissible. *Presley v. State*, 177 Ga. App. 611 (2) (a) (340 SE2d 253); *Mosley v. State*, 150 Ga. App. 802, 804 (258 SE2d 608). The trial court did not err in admitting evidence of the testimony of appellant as to his list of intended victims, and in refusing appellant's motion for mistrial.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED APRIL 14, 1988.

*Jesse T. Edwards*, for appellant.

*H. Lamar Cole, District Attorney, J. David Miller, Assistant District Attorney*, for appellee.