## A90A1355. O'KELLY v. THE STATE.
### (397 SE2d 197)

BEASLEY, Judge.

Defendant was convicted of five counts of criminal solicitation, OCGA § 16-4-7. He was represented by appointed counsel and sentence was entered on July 20, 1989. A pro se notice of appeal was filed on August 15. New counsel, appointed for the appeal, filed a motion for new trial on August 18, also within thirty days of the sentence. By order of February 16, 1990, the trial court denied the motion and counsel filed the second notice of appeal on March 12.

1. Although not addressed by either party, the pendency of both a notice of appeal and motion for new trial raises the issue of this court's jurisdiction.

Since each was filed within thirty days of the sentence, both were timely. OCGA §§ 5-6-38 (a) and 5-5-40. The motion for new trial made the notice of appeal premature, but the latter ripened when the denial of the motion was entered. *Atkinson v. State*, 170 Ga. App. 260 (1) (316 SE2d 592) (1984). *Hope v. State*, 193 Ga. App. 202, 203 (1) (387 SE2d 414) (1989). The second notice of appeal is a legal nullity.

2. Defendant first enumerates the denial of his motion in limine.

In three counts, defendant was charged with soliciting Officer Haas to murder his ex-girl friend Vinson, soliciting Scott to procure someone to throw acid in Vinson's face, and soliciting Scott to procure a hit man to murder Vinson. The remaining counts charged soliciting Carroll to pour sugar in the gas tank of Ellis, Vinson's daughter, and soliciting Carroll to kidnap Ellis and bring her to defendant.

A review of the evidence in favor of the verdict is necessary. Vinson and defendant had lived together for several months, but she left him when he objected to her working. He contacted her relatives trying to find her and called at her sister's to ask her to return. Ellis was also visited by defendant and asked about her mother.

Defendant approached Carroll, Ellis' neighbor, and told him he blamed Ellis for the breakup of his relationship with Vinson. He offered Carroll $40 to put sugar in Ellis' gas tank to disable her car. He gave Carroll two two-pound bags of sugar to use, plus $20, holding the rest until the job was done. He offered Carroll $1,000 to bring Ellis to

him when she asked him for a ride to work. Carroll did not put the sugar in the tank, and when the car continued to run, defendant asked for the reason.

Defendant then called Scott and requested that she ask her fiance if he would kill Vinson for $1,000. He declined. The next day, defendant asked Scott to try to contact Vinson for him and to go to the restaurant where she regularly ate and investigate the exits to see where defendant could grab her. He told Scott if he could not get someone else to do it, he would hurt her himself. Scott called Vinson, whom she did not know, and warned her.

The police contacted Scott, who was on the phone talking to defendant when they arrived. They arranged for Officer Haas to impersonate the hit man and contact defendant. He did so and arranged a meeting with defendant. It was tape-recorded. Defendant said he wanted Vinson killed and the body disposed of. Defendant told Haas where he could locate her and that he would pay $1,000 after the job was complete. He arranged to be at his sister's house on the planned day for an alibi. He said he had killed two people (his wife and mother-in-law), had spent 10-½ years in prison, and was on parole.

Vinson staged·a photograph showing her shot in the head which Haas took to defendant along with her cigarette case. Defendant went to his truck and was arrested when he returned to Haas with ten $100 bills.

The motion in limine sought to exclude all reference to defendant's past criminal record and convictions. OCGA § 24-9-20 (b).

In *Mosley v. State*, 150 Ga. App. 802, 803 (2) (258 SE2d 608) (1979), the evidence objected to was defendant's having said to his victim: " 'I hate to do this, but the law is after me. . . .' " While "[g]enerally, in the prosecution for a particular offense, evidence of another offense wholly independent from the one being prosecuted is inadmissible . . . if the statement [made] by the defendant forms a part of the same transaction of the one being prosecuted, it is a part of the res gestae and is admissible. [Cit.] The fact that it shows another crime and incidentally places the defendant's character in issue does not render it inadmissible. [Cit.]" *Mosley*, supra at 804. *Yarbrough v. State*, 186 Ga. App. 845, 847 (368 SE2d 802) (1988); *Simmons v. State*, 174 Ga. App. 171, 176 (11) (329 SE2d 312) (1985).

The admission of such a statement, here the recorded acknowledgment, is in the discretion of the court; it was not abused here. *Cooper v. State*, 188 Ga. App. 629 (1) (373 SE2d 796) (1988).

3. Defendant enumerates as error the denial of his motion for directed verdict. On review, the question is whether the evidence was sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Humphrey v. State*, 252 Ga. 525, 527 (314 SE2d 436) (1984).

The motion was based on the premise that, pursuant to *State v. Davis*, 246 Ga. 761, 762 (1) (272 SE2d 721) (1980), an essential element of the crime of solicitation is that the solicitation must create a clear and present danger that the person solicited will engage in conduct constituting a felony and that, because none of the people solicited in this case intended to carry through with criminal acts, defendant was entitled to a directed verdict.

*Davis* is misinterpreted. It dealt with the constitutionality of the statute as measured by the First Amendment and ruled that the statute does not contravene free speech but prohibits "only such language as creates a clear and present danger of a felony being committed." Id. The inquiry is directed not at the ears of the solicited and whether that person intends to commit the solicited acts, but at the words and intent of the solicitor, as shown by the words, the context, and other circumstances.

Defendant expressed his desire to see Vinson's daughter killed, provided the means for committing the disabling of her car, and made the following comments concerning Vinson: if he could not get someone else to hurt her, he would; he would do it himself but he had already spent time in prison for killing two others and did not want to return; if someone brought Vinson to him, he would "feed the fish"; "I know myself if I was in the right place at the right time, yes, I would blow her apart . . ."; "you know I want her dead."

These expressions were sufficient evidence of the solicitation contemplated by OCGA § 16-4-7. Denial of the motion for directed verdict was not error.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 12, 1990 — CERT. APPLIED FOR.

*Carlton C. Carter*, for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney*, for appellee.