A07A0760. WARD v. THE STATE.
(646 SE2d 745)

MILLER, Judge.

Following a jury trial, Ralph Clay Ward was convicted of manufacturing methamphetamine, possession of methamphetamine, criminal attempt to manufacture methamphetamine, and burglary. See OCGA §§ 16-13-30 (a), (b); 16-4-1; 16-7-1. The trial court merged the possession and attempt to manufacture counts into the manufacturing count for sentencing purposes. Ward appeals, claiming that the trial court erred in admitting a portion of his custodial statement and certain physical evidence. We disagree and affirm.

On appeal from a criminal conviction, Ward no longer enjoys a presumption of innocence, and we review the evidence in the light most favorable to the jury's verdict. See *Williams v. State*, 270 Ga. App. 424 (606 SE2d 871) (2004). So viewed, the evidence shows that on August 12, 2002, Ward's landlord reported that her children had discovered a cooler containing suspicious materials outside of Ward's residence. When officers with the Lookout Mountain Drug Task Force and City of LaFayette Police Department arrived at the scene, they concluded that the cooler contained items that could be used to

---

produce methamphetamine. The officers also discovered that a storage shed on the property had been broken into. After Ward provided his consent, officers searched his truck and residence. Methamphetamine laboratory components were discovered in both the truck and residence, and items from the storage shed were recovered in the residence.

1. Ward claims that the trial court erred in allowing the State to introduce a custodial statement in which he admitted having "turned the electrical meter over." Ward asserts that such statement improperly introduced his character into evidence. We disagree.

Prior to trial, Ward admitted to attempting to manufacture methamphetamine for his personal use and taking items from the storage shed. At trial, the State introduced Ward's written statement, describing the removal of items from the shed, into evidence. That statement read:

> On Saturday, August 10, 2002, my girlfriend and I moved into Apartment B at 308 Cavender Street. Festus Ashworth came to visit us. He went outside and came back in with a Crossman pellet rifle. He stated he got it out of a building on the outside. Festus took the rifle home with him. On Sunday, August 11, 2002, I found the panel missing from the front of the [storage shed]. I went in and got some tools. . . . My girlfriend[,] Sheila Coley[,] took a cross bow out of the building. The tools I took were the ones the police found in my apartment. On Saturday[,] August 10, 2002, I turned the electrical meter over so we could have power. No one gave any of us permission to take the panel out and go into the building. . . .

Ward claims that the inclusion of the reference to turning the electrical meter improperly placed his character in issue, in violation of OCGA § 24-9-20. The trial court disagreed, finding that the reference was not detrimental and was part of the res gestae of the burglary.

"Generally, on a prosecution for a particular crime, evidence of another and distinct crime wholly independent from [the one being prosecuted] is inadmissible." *Burger v. State*, 242 Ga. 28, 32 (8) (247 SE2d 834) (1978). If the statement by the defendant forms a part of the same transaction of the one being prosecuted, however, it is a part of the res gestae and is admissible. See id. The fact that it shows another crime and incidentally places the defendant's character in issue does not render it inadmissible. See *Lenear v. State*, 239 Ga. 617, 619 (3) (238 SE2d 407) (1977).

Here, Ward acknowledged he "turned the electrical meter" in connection with his admission of taking items from the storage shed. The acts were immediately related in time and place, and Ward failed to bring forward any evidence to rebut a showing that they were part of a single continuous transaction. See *Maddox v. State*, 227 Ga. App. 602, 604 (3) (490 SE2d 174) (1997) ("Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. [Cit.]"). As a result, even assuming that the statement related to turning the meter placed Ward's character at issue, it was in the discretion of the trial court to admit the reference as part of the res gestae of the burglary. See *O'Kelly v. State*, 196 Ga. App. 860, 861 (2) (397 SE2d 197) (1990).

2. Ward also claims that the trial court erred in permitting the State to introduce fluid samples, allegedly collected at Ward's residence, one of which tested positive for methamphetamine. Ward asserts that the State's failure to authenticate both samples resulted in reversible error. We disagree.

Included among the plethora of physical evidence introduced by the State were two fluid samples taken by Commander Chris Hill of the Lookout Mountain Drug Task Force. Commander Hill was in Kosovo at the time of Ward's trial and did not testify. Officer Patrick Cook, who also investigated the crime scene, testified that Commander Hill took one of the samples from a jar found in the cooler outside of Ward's residence and that Commander Hill gave him that sample immediately after taking it.

Officer Cook did not see Commander Hill take the second sample, but he testified that Commander Hill gave it to him "a few moments" after giving him the first sample. The samples were contained in identical containers, and Officer Cook was not able to distinguish between the sample that originated from the cooler and the sample that was given to him a few moments later. A forensic chemist with the State Crime Lab testified that one of the samples taken by Commander Hill contained methamphetamine and the other did not.

Given that Commander Hill was not present to testify as to where he drew one of the two samples — either of which could have been the one that testified positive for methamphetamine — Ward claims that the trial court should have prohibited both samples from being introduced into evidence. We find no merit in this claim.

> Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or

substitution. The State need not negat[e] every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.

(Citations and punctuation omitted.) *Anderson v. State*, 247 Ga. 397, 399 (2) (276 SE2d 603) (1981). Here, Ward was able to question Officer Cook in open court about his inability to identify the source from which Commander Hill drew the second sample. Despite his implication that Commander Hill tampered with or substituted the second fluid sample prior to delivering it to Officer Cook, Ward presented no evidence to support such a claim. Instead, Officer Cook testified that Commander Hill did not leave the scene or do anything that made him suspicious of the fluid samples.

"The fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible." (Citation and punctuation omitted.) *Martin v. State*, 267 Ga. App. 28, 32 (2) (598 SE2d 828) (2004). As a result, we will not disturb the decision of the trial judge to admit the fluid samples. See *Ginn v. State*, 251 Ga. App. 159 (1) (553 SE2d 839) (2001) ("The admission of evidence is a matter committed to the sound legal discretion of the trial judge, whose determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.") (citations and punctuation omitted).

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MAY 25, 2007.

*Jennifer E. Hildebrand*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.