S94A0969. MATULA v. THE STATE.
(449 SE2d 850)

HUNT, Chief Justice.

Priscilla Matula was convicted of forgery and the murder of her mother. She appeals, and we affirm.[1]

1. Matula contends that the evidence was insufficient to support a guilty verdict for the charge of murder. A jury was authorized to find the following facts. Priscilla Matula and her husband entered into an agreement to purchase a Jeep Eagle dealership. Matula's mother, Margaret Abernathy, made it possible for the Matulas to secure financing by backing them both personally and also through her real estate company; further, Mrs. Abernathy loaned them substantial sums of money, signed a guaranty, and pledged a certificate of deposit and her home as collateral.

Despite Abernathy's support, the dealership experienced difficulties. To manufacture the positive cash flow required to obtain a line of credit from the bank and authorization of the dealership from

---

[1] The murder occurred on February 4, 1991. On August 28, 1992, Matula was found guilty of murder and six counts of forgery. She was sentenced to life imprisonment for murder and to five years for each count of forgery, all sentences to run concurrently. Matula's motion for an out-of-time appeal was filed on December 23, 1993, and granted on December 28, 1993. The appeal was docketed on March 25, 1994, and argued on June 7, 1994.

Chrysler, Matula, who had signature authority on several dealership accounts, her mother's company's account, and her personal account, forged and kited checks. On the Friday before her murder, Abernathy learned that Priscilla Matula was not making required lien payoffs and that her failure to do so had resulted in problems for both the bank and the dealership's customers. The following day Abernathy, upset by her daughter's schemes, went to the bank and attempted to have Matula's name removed from the checking account signature card for the real estate company. Bank employees told her that because it was a Saturday, she would have to wait until Monday to complete the process.

On Monday morning at approximately 7:15, a witness saw Matula at a convenience store not far from her mother's home; the witness, who had known her for many years, described her as upset and distracted. Matula arrived at work around 8:15 a.m., but left again around 10:00, ostensibly to buy stamps at the post office. However, another witness, who had gone to inquire about renting a house across the street from Mrs. Abernathy's house, saw Matula in the convenience store near her mother's house at about 10:00 a.m., and a few minutes later saw her car at her mother's house. The witness testified further that as she left the rental house she heard a gunshot and that at that time Matula's car was still in Abernathy's driveway. Matula returned to the dealership around 10:30 a.m. but left again a little after 12:00 p.m., saying that she was worried about her mother. Around 12:30 p.m., Matula called to report that her mother had been hurt. It was not until Abernathy was taken to the hospital that it was discovered that she had two gunshot wounds to the head. A nurse at the emergency room testified that Matula, upon learning that her mother would die, burst out and said, "Oh my God, what have I done?" At this point, Matula's husband said "Shut your damn face." Later, however, after her husband had left, the nurse again heard Matula say, "Oh my God, what have I done?"

Police investigators who processed the scene of the murder testified that it was their strong belief that the burglary of Abernathy's home had been staged because the hole that had been made in the back window was too small for an arm to pass through to open the door and because the belongings that had been taken from drawers and cabinets had been neatly stacked on the floor. After reviewing this evidence in a light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found the defendant guilty of the crime charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. As to each of the counts of forgery, Matula contends that there was insufficient evidence to support a verdict of guilty.

A person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority and utters or delivers such writing.

OCGA § 16-9-1 (a). The jury was authorized to find that in each of the six counts charged, Matula knowingly signed the name of another individual without that individual's authority. Further, since "[k]nowingly passing as genuine a forged instrument is conclusive of the intent to defraud[,]" *Jordan v. State*, 127 Ga. 278 (56 SE 422) (1906), the jury was authorized to find that Matula forged the instruments with the intent to defraud.

3. At trial the state introduced evidence that Matula had kited a number of checks. Matula argues that because those checks, which related to transactions that were not subjects of the indictment, constituted similar transactions, the trial court erred in allowing the state to introduce this evidence without complying with Uniform Superior Court Rules 31.1 and 31.3. Pretermitting the question of whether these transactions involving the kiting of checks were indeed similar, we find that any error in this regard was harmless. USCR 31.1 requires the state to give the defense ten days notice of its intention to present evidence of similar transactions. USCR 31.3 requires the trial court to hold a hearing on the admissibility of the evidence of similar transactions at which the state has the burden of proving the admissibility of the evidence. In the present case, the state notified the defense many months before trial that it would be introducing in evidence a financial analysis of Matula's business which would include testimony regarding the check kiting scheme. Thus, the defense had notice of the state's intent and the opportunity to resolve questions regarding the admissibility of the evidence. Further, the trial court, prior to any testimony regarding this scheme, conducted a de facto 31.3 hearing in that it heard from both the defense and the state as to the propriety of admitting this evidence; the court also gave detailed cautionary instructions to the jury as to the proper use of this evidence. The court decided, as we believe it would have had it held the 31.3 hearing, that the state's purpose in introducing the evidence was proper and that the evidence was admissible. Accordingly, any error, if indeed there were error, was harmless.

4. Matula argues that the trial court erred in failing to sever the murder count from the forgery counts. We disagree. Here the offenses were based on the same conduct or series of acts which are connected or which constitute parts of a single plan or scheme, and the trial

court did not abuse its discretion in denying the motion for severance. *Gober v. State*, 247 Ga. 652, 653 (278 SE2d 386) (1981).

5. The remaining enumerations of error are without merit.[2]

*Judgment' affirmed. All the Justices concur.*

DECIDED NOVEMBER 28, 1994.

*Duncan, Thomasson & Acree, Marc E. Acree*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Marla-Deen Brooks, Assistant Attorney General*, for appellee.

---

[2] Matula also claims that the trial court erred in failing to grant her motion for change of venue and to sequester the jury.