## A97A0125. McTAGGART v. THE STATE.
(483 SE2d 898)

ELDRIDGE, Judge.

Appellant, James David McTaggart, was tried on three counts of solicitation for murder. In Count 1, appellant was charged with soliciting Terry Haas on May 19, 1994, to murder Theresa Morris. In Count 2, appellant was charged with soliciting Terry Haas on May 19, 1994, to murder Nancy McTaggart. In Count 3, appellant is charged with soliciting Pat Richards on May 18, 1994, to murder Theresa Morris. Nancy McTaggart is appellant's former wife, who had been after him about back child support and who had him tried and convicted of committing an aggravated assault upon her just prior to the incident in the case sub judice.

The incident in the case sub judice was precipitated upon appellant's belief that Theresa Morris, with assistance and encouragement from Nancy McTaggart, burglarized his home, took some 45 rifles, shotguns, and pistols, and sold them in Alabama. Pat Richards, a friend that owed appellant money, was told by appellant that the debt would be forgiven and that he would be paid an additional $1,500 if he would kill Nancy McTaggart. Appellant gave Richards a loaded pistol and told him to commit the murder or appellant would kill him. Richards became frightened and called the police, who began an undercover operation using Detective Terry Haas as "Bo,"

an alleged hit man from south Georgia. On May 24, 1994, Bo telephoned appellant and discussed carrying out the murders of the two women who had been placed in protective custody. During the tape-recorded conversation, appellant told Bo that he wanted them killed that day and wanted to have evidence that they were dead.

Bo called the next day to tell appellant that the murders were completed, that he had Polaroid photos of the bodies, and that he wanted the $2,500 promised for doing the murders. Appellant stated that he was leaving for Tennessee and would see him later. The police, from their surveillance, knew that appellant had not left town; the police became concerned that appellant would kill the women himself if he learned that they were still alive. They obtained an arrest warrant and took appellant into custody. After being given the *Miranda* rights, appellant agreed to talk to Detective John Mark Dawes and other detectives. After about 30 minutes of warmup questioning, the detectives tape recorded appellant's responses to their questions, which tape was transcribed on August 11, 1994, and was 30 pages long.

Appellant was indicted on September 8, 1994. Plea and arraignment was held on October 10, 1994. Jury selection began for trial on February 28, 1995. The trial began on March 1, 1995. The verdicts of guilty on Counts 1 and 2 and not guilty on Count 3 were returned on March 3, 1995. On June 28, 1995, the appellant was sentenced to five years to serve on each count to run consecutively. Motion for new trial was filed on July 6, 1995. An amended motion for new trial was filed on February 12, 1996. The amended motion for new trial was heard and denied on February 13, 1996. Notice of appeal was filed on February 14, 1996.

1. The first enumeration of error is that the trial court abused its discretion in failing to grant a continuance of the trial date.

Appellant was arrested on a warrant on May 25, 1994. Appellant has been represented by defense counsel since May 26, 1994, when a release on bond was sought. Appellant was indicted on September 8, 1994, and was arraigned on October 10, 1994. The first notice of trial was filed on November 17 for trial calendars on November 28 and December 5, 1994. A defense conflict letter caused the case to be continued. On December 27, notice for trial calendars on January 9, 1995, was given, but this also was continued based upon a defense motion. By court order the case was set on February 16 for trial on the calendars for February 20 and 27, 1995. A defense motion for a continuance from the February 20 calendar was granted.

Although the prosecution had made extensive discovery disclosures on September 8, 1994, the prosecution made a supplemental discovery disclosure dated February 17, 1995, which was not received until February 21. Defense counsel orally moved at the calendar call

of February 27 for yet another continuance because certain witnesses were out of town until March 2 and others could not be found; the defense contention was that the prosecution discovery was late so that the appropriate witnesses had to be called late. Defense counsel in this oral motion did not disclose the identities of all the witnesses; did not state that the witnesses were under subpoena; did not disclose the nature and substance of their testimony in order to demonstrate relevance and materiality; and did not state when these witnesses would, if ever, be available for trial. While denying the motion for a 30-day continuance, the court continued the case until Wednesday, March 1, the day before the witnesses that had been found were supposed to be available. Thereafter, the defense put only appellant up to testify, despite the fact that the defense case was not put on until Thursday, March 2, when even the out-of-town witnesses were supposed to be available.

OCGA §§ 17-8-20 and 17-8-22 require that defense counsel show due diligence when making application for a continuance and that the trial judge in the exercise of sound legal discretion shall grant or deny "as the ends of justice may require," such continuance. Under OCGA § 17-8-25, certain criteria must be shown by the movant in obtaining a continuance based on the absence of witnesses. Appellant failed to make the proper showing. In this case, the witnesses were not under subpoena; there was no offer of proof made so that the trial judge could exercise his sound discretion in determining whether the evidence was relevant and material or merely cumulative or impeaching; and there was no showing that the witnesses were not absent with permission of counsel or that the witnesses would be available at the next trial term of court.

Further, defense counsel made no showing of due diligence in trial preparation or that they had conducted their own discovery, instead of relying solely upon the prosecution. See *Mojica v. State*, 210 Ga. App. 826 (437 SE2d 806) (1993); *Davis v. State*, 204 Ga. App. 657 (420 SE2d 349) (1992). Defense counsel failed to reveal that the witnesses had identities, that they were under subpoena, and that the witnesses were to testify as to relevant and material facts set forth in a proffer of proof. See *Dorsey v. State*, 203 Ga. App. 397 (416 SE2d 879) (1992); *Hulett v. State*, 150 Ga. App. 367 (258 SE2d 48) (1979). Counsel failed to show that he reasonably could expect to have the witnesses present in court without undue delay. *Miller v. State*, 208 Ga. App. 20 (430 SE2d 159) (1993).

Each of the statutory grounds for a continuance based upon an absent witness is absolute, so that the failure to substantially comply is a ground to deny a continuance. *Curry v. State*, 177 Ga. App. 609 (340 SE2d 250) (1986); *Brown v. State*, 169 Ga. App. 520 (313 SE2d 777) (1984); *McNabb v. State*, 69 Ga. App. 885 (27 SE2d 246) (1943).

The trial court is entitled to know what relevant and material evidence the witness will prove in order to exercise discretion in ruling. *Mell v. State*, 69 Ga. App. 302 (25 SE2d 142) (1943); see also *Wiggins v. State of Ga.*, 84 Ga. 488 (10 SE 1089) (1890); *Griffin v. State of Ga.*, 26 Ga. 493 (1858). The testimony cannot be merely cumulative or impeaching, and the court must have the testimony proffered to establish that it is not. *Daniel v. State*, 180 Ga. App. 179 (348 SE2d 720) (1986). For the proffer to justify a continuance, it should appear that no other witness can provide such relevant and material evidence. *Hill v. State*, 91 Ga. 153 (16 SE 976) (1893). If the witness is the sole witness for the defense, then a continuance should be granted. *Teat v. State*, 181 Ga. App. 735 (353 SE2d 535) (1987).

In the case sub judice, absent a satisfaction of each of the statutory grounds, the trial judge did not abuse his discretion in denying a continuance. *Garrett v. State*, 202 Ga. App. 463 (414 SE2d 693) (1992). Moreover, this Court cannot find abuse in the trial court's exercise of discretion when all of the statutory requirements have not been met, because the absence of any one of such conditions would justify the trial court's denial. *Vaughan v. State*, 210 Ga. App. 381 (436 SE2d 19) (1993). Thus, we find that the trial court did not abuse its discretion in denying the continuance of trial.

2. The second enumeration of error is that the trial court erred in admitting evidence of prior difficulties between appellant and appellant's wife, who was named in the indictment as one of the victims of the solicitation of murder charge.

Evidence of the prior difficulties between appellant and Nancy McTaggart is highly probative, i.e., relevant and material, for several reasons: first, it provides both a motive and intent to solicit her murder; second, it corroborates statements that appellant made publicly that he would not mind seeing her "bumped off"; third, it demonstrates identity and the capability to commit a violent crime against Nancy McTaggart, or any other woman that he hates, i.e., Theresa Morris; fourth, such prior course of conduct shows a violent habit or difficulties in his relationship with Nancy McTaggart; and fifth, such prior conduct and statements provide an explanation for appellant's modus operandi in hiring a hit man so that he could establish an alibi, since he had threatened to kill McTaggart when he got out of jail for the prior aggravated assault conviction. Any of the foregoing reasons would be sufficient for such evidence to be admissible.

A hearing under *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991), on the prior similar offense of aggravated assault was held, during which the investigating officer described finding a bullet hole in the front door, arresting appellant, and having appellant state, "just wait, when I get out of jail, I'm going to kill her." This admission against penal interest demonstrated a direct nexus

between the aggravated assault charge and the solicitation for murder charge because appellant made the statement in retaliation for his arrest on the aggravated assault against Nancy McTaggart. Appellant knew he would be the prime suspect and would have to establish an alibi for the period of time when she was murdered; thus, his prior statement explained appellant's motive, intent, and course of conduct, as well as his modus operandi.

In the case sub judice, the trial court did not give the prosecution the opportunity to state the reasons why the prior similar transaction was being tendered, but ruled the evidence admissible. The prosecution failed, at the *Williams* hearing, to articulate orally what it had done previously in written notice, i.e., state the proper purposes for the admission of the prior crime. At the close of the hearing, the trial court afforded the defense an opportunity to object, but the defense made no further general or specific objection to the court's ruling; such objection was, therefore, waived. *Skiver v. State*, 213 Ga. App. 424, 425 (1) (444 SE2d 836) (1994); *Kincer v. State*, 208 Ga. App. 360, 361 (430 SE2d 597) (1993); *Jackson v. State*, 205 Ga. App. 513, 514 (422 SE2d 673) (1992); *Hunter v. State*, 202 Ga. App. 195, 196-197 (3) (413 SE2d 526) (1991).

However, even if this issue has been properly preserved, the court saw the obvious purposes for admission, went through a *Williams* determination on the record and stated "I am being presumptuous. . . . Am I to assume that you are seeking to introduce into evidence the similar transactions of which we just heard?" The prosecutor confirmed this and stated that he thought the court would allow him to state his reasons. The trial judge responded, "No, that's satisfactory with the court, your statement to that affect." The trial court then went on to conduct a *Williams* analysis, finding that: (1) the appellant committed the prior acts; (2) sufficient similarity existed between the independent offense and the offense charged so that proof of the former tended to prove the latter; and (3) any prejudice that resulted was outweighed by the probative value in the current trial. The trial court found that the *Williams* factors had been sufficiently established to admit evidence of the prior conduct. The prosecution confirmed that the court's findings included the purpose asserted by the state and offered to make further tender if necessary, but the court declined. Defense counsel did not object to this procedure and stood mute.

At trial and during the hearing in the case sub judice, the state presented detailed evidence showing the nexus between the two crimes, that the former directly led to the latter, so that such evidence would be independent of the *Williams* analysis. Nevertheless, the *Williams* criteria was satisfied, not only at the hearing, but also at trial. While the procedure used by the trial court did not allow the

prosecution to articulate, in its own words, the state's reasons for introducing the prior similar crime, the prosecutor affirmed on the record, after the court articulated both the purpose for introduction and the *Williams* analysis, that the court's rationale was why the prosecution sought introduction of such evidence. This procedure went forward without objection by the defense to the failure of the prosecution to state in its own words the purposes for introduction of the evidence and, had there been an objection timely made, the trial court would have allowed the prosecutor to state such reasons as the prosecution offered to do, instead of simply adopting the court's rationale. The essential purpose of conducting the *Williams* analysis is to ensure that there exists a legitimate, probative purpose in introducing an independent criminal act and that there exists sufficient similarity to make the probativeness outweigh any prejudice as a consequence to injecting character into the case. The record demonstrates that everyone at the hearing knew the obvious reason for the introduction of this evidence; thus, the trial court anticipated the purpose, and the prosecutor merely agreed with the court. The defense stood mute. The rights of appellant were safeguarded, the essential purpose of a *Williams* hearing was met, and the decision of the trial court was correct to allow the evidence of the other crime into evidence.

This Court is aware that in *Stephan v. State*, 205 Ga. App. 241, 243-244 (2) (422 SE2d 25) (1992), we held that where the prosecutor introduces a similar transaction at trial in violation of the ten-day rule under Uniform Superior Court Rule 31.1, fails to state the purpose for which the evidence was admitted and the trial court instructs the jury on *all* permissible purposes, such combination of factors requires reversal. However, in *Love v. State*, 214 Ga. App. 351, 352 (1) (447 SE2d 698) (1994), we clarified such holding so that, when *Williams* has been complied with in a USCR 31.3 (B) hearing, the trial court has made a determination of admissibility, and a limiting instruction specifies the legitimate purpose or purposes for which the jury may consider the prior similar crime, under such circumstances there is no error in a broader jury charge which encompasses multi-purposes.

The trial court in the case sub judice, at the request of defense counsel, charged the jury "for the purpose of illustrating, if it does so illustrate, intent, guilty knowledge, motive, method or scheme of operation and it is not to be considered for any other purpose." The defense made no objection to this limiting instruction and did not reserve the right to object later. In the case sub judice, unlike the facts and circumstances of *Stephan*, supra, there exists all of the purposes set forth in the charge, with supporting evidence, so that the evidence was admissible for any one or all purposes to be considered

by the jury.

Moreover, the purposes for the introduction of such evidence were known to the defense since October 19, 1994. Such written notice stated that the proper purposes were "to show course of conduct, scheme, bent of mind, and motive," which were supported by evidence, not only at the hearing, but also at trial. The Supreme Court in *Matula v. State*, 264 Ga. 673, 675 (3) (449 SE2d 850) (1994) held that substantial compliance with the purposes of *Williams* is all that is required when there has been notice as to a proper purpose, evidence, hearing, and a judicial determination of the admissibility. Accord *Harris v. State*, 222 Ga. App. 52, 53-54 (2) (473 SE2d 232) (1996); *White v. State*, 213 Ga. App. 429, 430-431 (1) (445 SE2d 309) (1994). Thus, for all of these reasons above, there was no error in the instant case.

This Court notes that, although the parties argue this issue under a *Williams* analysis, the facts and circumstances of this case require that an analysis be made, not under *Williams* as a prior similar transaction, but under *Maxwell v. State*, 262 Ga. 73, 74-75 (2) (414 SE2d 470) (1992), as prior difficulties between the parties where the issue is not similarity with an independent crime, but the existence of a nexus between the prior conduct and the subsequent crimes, between the same people, arising from their difficulties with each other.[1] USCR 31.3 (B) applies to a *Maxwell* analysis and was fully satisfied in this case, because the trial court made a judicial determination that the prior aggravated assault, death threat, and physical assault which was committed in order to induce a withdrawal of the charge of aggravated assault had a probative connection with the instant crime of solicitation to murder the same victim. *Cooper v. State*, 256 Ga. 234, 235 (347 SE2d 553) (1986). These quarrels, threats, and the assault, continuing up to the present offense, "may shed some light upon the motive for the homicide and may, therefore, be admissible." *Maxwell*, supra at 75; see also *Gunter v. State*, 243 Ga. 651, 656 (256 SE2d 341) (1979). Under *Maxwell*, supra, the focus of the analysis is not necessarily on the similarity of the crimes against the victim by the perpetrator, but is, essentially, the connectedness of the crimes and parties so that proof of the former tends to prove the latter. *Chastain v. State*, 260 Ga. 789, 790-791 (3) (400 SE2d 329) (1991); *Harris v. State*, supra at 54. Under *Maxwell*, supra, the proper purpose for the introduction of a prior difficulty between the parties must be, at a minimum, "motive," but there may be other proper purposes as well. If an independent criminal act

---

[1] Since the analysis is similar, then there was no harm to appellant, because the *Williams* analysis is far stricter than under *Maxwell*.

does not arise between the *parties*, then it would have to come under *Williams*, supra. However, unlike similar transactions, prior difficulties between the parties are not independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus. See *Rainwater v. State*, 256 Ga. 271, 272 (1) (347 SE2d 586) (1986); *Mitchell v. State*, 254 Ga. 353, 355 (5) (b) (329 SE2d 481) (1985); see also *Stewart v. State*, 263 Ga. 843, 847-850 (440 SE2d 452) (1994) (Hunt, P. J., dissenting).

Finally, we note that it has long been the law in this state that "if evidence is duly admissible under any legitimate theory, it should be admitted even though it does not qualify for admission under one or more other evidentiary theories." *Boatright v. State*, 192 Ga. App. 112, 116 (6) (385 SE2d 298) (1989). Thus, if a trial court holds a hearing outside the presence of the jury and finds that evidence of prior criminal conduct is directly probative of and related to any issue in the case, then it would be admissible, although it does not satisfy the connectedness requirement of *Maxwell* or the similarity requirement of *Williams*; if the evidence is admissible under any legitimate evidentiary theory, then it comes into evidence as an exception to the general rule regarding the character of the defendant. See *Satterfield v. State*, 256 Ga. 593, 598 (351 SE2d 625) (1987); *Spurlin v. State*, 228 Ga. 2, 5 (4) (183 SE2d 765) (1971); *Campbell v. State*, 215 Ga. App. 14 (449 SE2d 366) (1994); *Owen v. State*, 202 Ga. App. 833, 835 (415 SE2d 537) (1992); *Chambers v. State*, 201 Ga. App. 245, 246 (410 SE2d 771) (1991), rev'd on other grounds, 262 Ga. 200 (415 SE2d 643) (1992); *Boatright v. State*, supra at 116; *Simmons v. State*, 186 Ga. App. 886 (369 SE2d 36) (1988). In the case sub judice, the evidence about which appellant complains was not just a prior difficulty between the parties, but was part of the cause of the conduct that led directly to the offense for which appellant was charged. Thus, it was admissible. *Burger v. State*, 242 Ga. 28, 32 (247 SE2d 834) (1978); *Spurlin*, supra at 5; *Presley v. State*, 177 Ga. App. 611, 614 (340 SE2d 253) (1986).

In the case sub judice, the requirements of *Maxwell*, supra, had been fully satisfied, and the trial court did not err in the admission of such testimony regarding the prior difficulties between the parties under any other evidentiary theory.

3. The third enumeration of error is that the trial court erred in admitting appellant's custodial statement when it had not been timely delivered to the defense in response to a proper written request.

This case was docketed prior to January 1, 1995, the effective date of the repeal of the prior criminal discovery act; this Court has applied the repealed OCGA § 17-7-210 to such cases. See *Livingston*

*v. State*, 222 Ga. App. 298 (474 SE2d 1) (1996); *Holland v. State*, 221 Ga. App. 821 (472 SE2d 711) (1996); *Matthews v. State*, 221 Ga. App. 129 (470 SE2d 518) (1996).

OCGA § 17-7-210 (b) states that the prosecution shall provide "all relevant and material portions of the defendant's statement" if oral, or partially oral, upon timely written request. Where a reasonable and fair summary is timely provided to the defense, such summary will satisfy the requirements of the statute. *Lewis v. State*, 183 Ga. App. 41 (357 SE2d 862) (1987); *Johnson v. State*, 177 Ga. App. 705 (340 SE2d 662) (1986); see also *Van Kleeck v. State*, 250 Ga. 551 (1) (299 SE2d 735) (1983). Such written summary must fairly cover all "relevant and material portions of defendant's statement" both as to incriminatory matters, exculpatory matters, or impeachment by contradictory matters. *Reed v. State*, 163 Ga. App. 364, 365 (295 SE2d 108) (1982). "The purpose of the discovery statute (OCGA § 17-7-210) is to inform the defendant in writing of all relevant and material portions of his own statement that the State may rely upon to the defendant's disadvantage." *Lewis v. State*, supra at 42; accord *Bowe v. State*, 201 Ga. App. 127, 129 (2) (410 SE2d 765) (1991). Unlike the facts in *Holland v. State*, supra, in the case sub judice, the five-page summary provided to the defense on September 21, 1994, of the May 24, 1994 custodial interview fairly summarized all of the "relevant and material" portions of the tape-recorded interview, which comprised 30 pages. The prosecution mailed to the defense a copy of the transcript dated February 17, 1995, but it was not received by the defense until February 21. The tape in its entirety was played for the jury. The trial court heard extensive argument as to whether or not the entire transcript was delivered the requisite ten days prior to trial. However, such matter is irrelevant, because a fair summary of all "relevant and material" portions of the custodial statement of appellant had been provided on September 21, 1994, so that the delivery of the actual transcript prior to trial was not required by the statute, with which the prosecution had already complied in a timely manner. Further, appellant fails to point to any portion of the transcript as being relevant and material which was not contained in the summary.

The prosecution timely satisfied OCGA § 17-7-210 by providing the summary, so that the defense was adequately warned in advance that the state would use his statement to his disadvantage. The trial court did not err in allowing the custodial statement of appellant to be introduced into evidence.

4. The fourth enumeration of error is that the trial court erred in denying appellant's request to charge the jury on the law of "attempt" as a lesser included offense of the crimes charged in the indictment.

OCGA § 16-4-7 (a) states that "[a] person commits the offense of

criminal solicitation when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in such conduct."

The Supreme Court, in *State of Ga. v. Davis*, 246 Ga. 761, 762-763 (2) (272 SE2d 721) (1980), construed this statute to mean, that "only a relatively overt statement or request intended to bring about action on the part of another person will bring a defendant within the statute. Furthermore, in light of our holding . . . that the statute only embraces language which creates a clear and present danger that a felony will be committed, the phrase 'or otherwise attempts to cause such other person to engage in such conduct' is construed as meaning 'or otherwise creates a clear and present danger of such other person perpetrating a felony.' "

The evidence at trial shows that all of the elements of the crime of solicitation to murder had been shown. See *Meadows v. State*, 190 Ga. App. 662, 663 (1) (380 SE2d 326) (1989); see also *Norris v. State*, 176 Ga. App. 164, 167-168 (6) (335 SE2d 611) (1985). The crime of solicitation is complete when the accused with intent, mens rea, engages in the overt act of asking another to commit a felony, actus reus. There exists no lesser criminal offense, either in law or in fact, such as attempt to solicit a felony. See *Shuler v. State*, 195 Ga. App. 849 (1) (395 SE2d 26) (1990); *Weaver v. State*, 176 Ga. App. 639, 640-641 (3) (337 SE2d 420) (1985).

The trial court did not err in refusing to charge on criminal attempt to solicit to murder, which charge is not supported in law or fact.

5. The fifth enumeration of error is that the trial court erred in sua sponte responding to the jury's request to send them copies of the charges by stating that he would be unable to do so without first informing appellant of the jury's question and the court's proposed reply.

When counsel and appellant returned to the courtroom for a recharge, the trial court informed defense counsel of the earlier note and the court's response. Defense counsel did not make an objection to such communication at the earliest opportunity and raises such issue for the first time on appeal. Thus, such alleged error was waived, and we will not consider it. *Johnson v. State*, 254 Ga. 591, 596-597 (5) (331 SE2d 578) (1985); see also *Williams v. State*, 251 Ga. 749, 797-798 (11) (312 SE2d 40) (1983); *Wanzer v. State*, 232 Ga. 523, 525-526 (1) (207 SE2d 466) (1974).

6. The sixth enumeration of error was that the trial court failed to recharge the jury, upon request by the defense, with an instruction on the law of criminal intent which included language that the appellant was not presumed to have acted with criminal intent.

Upon request by the jury, the court recharged the jury, twice, on the essential element of intent. Defense counsel requested that the court recharge the jury that the defendant should not be presumed to act with criminal intent. The trial court refused to give such additional charge. In the original charge to the jury, the trial court gave the following instructions to the jury: "This defendant will not be presumed to have acted with criminal intent. But you may find such intent or the absence thereof upon a consideration of words, conduct, demeanor, motive, and other circumstances connected with the act for which the accused is being prosecuted."

This Court, in *Miller v. State*, 221 Ga. App. 718 (472 SE2d 697) (1996), held that there was no error on recharge when the trial court refused to recharge in the same language requested by appellant, after a charge that the defendant shall not be presumed to act with criminal intent. There, as in the case sub judice, the original charge contained such language.

*Grimes v. State*, 199 Ga. App. 152, 153 (2) (404 SE2d 324) (1991), is distinguishable on the facts, because the jury asked for a recharge on the possible verdicts which included several charges as well as lesser included offenses, and the trial court, in giving the full range of possible guilty verdicts, failed to include the possibility of a not guilty verdict, which was tantamount to a direction to the jury to find the defendant guilty. See *Miller v. State*, supra.

"The need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial judge." *Peebles v. State*, 260 Ga. 165, 167 (5) (a) (391 SE2d 639) (1990). "When the jury requests a charge or recharge on a particular point, the trial court has discretion to also give or not give additional instructions." *Patterson v. State*, 264 Ga. 593, 594 (2) (449 SE2d 97) (1994). "In determining whether the recharge contained error, it is fundamental that we must look at not only the recharge but the original charge as well, as jury instructions must be read and considered as a whole in determining whether the charges contain error." *Taylor v. State*, 195 Ga. App. 314, 315 (1) (393 SE2d 690) (1990); see *Hambrick v. State*, 256 Ga. 688, 690 (3) (353 SE2d 177) (1987).

A review of the charge and recharge demonstrates that the trial court did not abuse its discretion, and we so find.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED MARCH 11, 1997.

*Daniel L. Henderson*, for appellant.

*Thomas J. Charron, District Attorney, Nancy I. Jordan, Debra H. Bernes, Ann B. Harris, Assistant District Attorneys*, for appellee.