A07A2371. ENGLISH v. THE STATE.
(659 SE2d 783)

JOHNSON, Presiding Judge.

A jury found John McNaughton English guilty of criminal solicitation to commit the murder of Joe Buice, criminal solicitation to

commit the murder of Grady White, and criminal solicitation to conceal the death of Joe Buice. He appeals from the convictions entered on the jury's verdict. We affirm.

1. English contends the trial court erred in denying his motion for a directed verdict of acquittal on all of the charges. We disagree.

A motion for a directed verdict of acquittal should be granted only when there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom demands a verdict of acquittal as a matter of law.[1] The standard for reviewing a denial of a motion for a directed verdict of acquittal is the same test to be used when the sufficiency of the evidence is challenged, i.e., under the rule of *Jackson v. Virginia,* whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense.[2]

Viewed in the proper light, the evidence shows that English told his friend Steven Scott that he wanted two game wardens with the Georgia Department of Natural Resources killed. English complained that ranger Grady White and sergeant Joe Buice had charged him with several hunting violations, and that if the men were "gone out of his life," he could not be indicted on the hunting charges.

English first asked Scott to kill the men in mid-March 2004. English brought the matter up frequently, and suggested different methods of killing the wardens, including running them off the road, poisoning, and shooting them. English asked Scott to commit the crimes because he felt Scott "could get the job done to his satisfaction." English asked Scott to purchase a stolen, untraceable rifle.

Scott and Buice were friends. Scott reported these conversations to Buice. The Georgia Bureau of Investigation then equipped Scott with a wire to record his future conversations with English.

Scott purchased a stolen rifle from a third party, then went to English's house to show him the rifle. English examined the rifle, and discussed putting a new scope on it. English and Scott went upstairs to English's attic, where English looked for a scope to put onto the rifle. English remarked that he was going to make a target with Buice's face on it to "sight" the rifle. Along with discussing plans to shoot the men, the men talked about other means of killing the wardens. This conversation, as well as several of their subsequent conversations, was recorded. The audiotapes were played at trial.

Scott and English met again. This time, English brought a scope to mount onto the rifle. Scott knew that English did not have cash "for the job he wanted done," so the two discussed payment in the form of

[1] *Helton v. State,* 284 Ga. App. 777 (1) (644 SE2d 896) (2007).
[2] *Dorsey v. State,* 279 Ga. 534, 542 (3) (615 SE2d 512) (2005).

some stolen four-wheelers English had in his possession. English suggested different ways in which Buice's body could be concealed after the murder.

Another witness testified that English told him that he had been talking to Scott about having Scott kill the men. English discussed different methods of killing them, including having Scott wait outside of Buice's house and shoot him when he came outside. English told the witness why he wanted the officers killed and about plans to dispose of the bodies.

OCGA § 16-4-7 provides that a person commits the offense of solicitation when he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to commit a felony.[3] In this case, the underlying felonies were murder and concealing a death. Only a relatively overt statement or request intended to bring about action on the part of another person will bring a defendant within the solicitation statute.[4]

English's words, their context, and other circumstances express a clear intent to have Scott murder White and Buice. Thus, the trial court did not err in denying English's motion for a directed verdict of acquittal on charges of criminal solicitation to commit the murders.[5]

Nor did the trial court err in failing to direct a verdict of acquittal on the charge of criminal solicitation to conceal a death. The state charged English with soliciting another to commit a felony, namely, concealing the death of another, in that he urged another "to place the body of Joe Buice, a human being, in a pipe and submerge said pipe and body in a body of water."

English argues that because there was no death in this case, there was no death to conceal.[6] Therefore, he contends, he could not be convicted of solicitation to conceal a death. While English's argument has some allure, he has not cited a single case holding that a conviction for the crime of solicitation to conceal a death cannot stand where a solicited murder has not been completed.

The crime of solicitation is complete when the accused, with intent, engages in the overt act of asking another to commit a felony.[7] There exists no lesser criminal offense, such as attempt to solicit a felony.[8] Here, there was evidence that English solicited Scott to commit murder and to conceal the death by placing the victim's body

---

[3] See *McTaggart v. State*, 225 Ga. App. 359, 367-368 (4) (483 SE2d 898) (1997).

[4] Id. at 368.

[5] See *O'Kelly v. State*, 196 Ga. App. 860, 861-862 (3) (397 SE2d 197) (1990).

[6] OCGA § 16-10-31 provides that a person who, by concealing the death of any other person, hinders a discovery of whether or not such a person was unlawfully killed is guilty of a felony.

[7] See *McTaggart*, supra.

[8] Id.

in a pipe and submerging it in a body of water. We hold that the evidence was sufficient to convict English of solicitation to conceal a death, despite the fact that the solicited murder was not ultimately accomplished.

2. English contends the trial judge should have recused himself from the case in order to avoid the appearance of impropriety. He says that the trial judge learned during a pre-trial plea negotiation conference that English had information about some golf carts stolen from the judge's brother, and then failed to disclose that information to the judge when negotiations failed. English also points to the judge's following remark while sentencing him in another case in June 2005:

> I'm sorry. *I don't like you.* I don't like you for what you've done to your folks and your brother. They're not going to jail, but you have put them through hell. . . . I could sentence you to sixty-six years and I'm not going to do that.

(Emphasis supplied.) The judge then sentenced English to serve five years.

English focuses his argument on the "I don't like you" language. In his brief, English states that he "does not claim, nor does he know, whether the golf cart issue played a role in how the [current] trial was handled." Like English, we are unable to discern from the record that any harm resulted from either example of alleged impropriety.[9]

Moreover, motions to recuse must be timely.[10] They must be made "as soon as the facts demonstrating the basis for disqualification become known."[11] Uniform Superior Court Rule 25.1 provides that such motions must be made "not later than five (5) days after the affiant first learned of the alleged grounds for disqualification," unless good cause is shown.

English knew in June 2005 that the judge had said he did not "like" him. And English was aware on or before July 18, 2005, the first day of trial, that the trial judge had been told English had information about the golf carts. Yet no motion for recusal was made. Instead, the issue was not raised until English filed an amended motion for new trial in September 2006. If English was aware of a possible basis for recusal, he had no right to sit back, hope for a favorable ruling or

---

[9] *Gillman v. State*, 239 Ga. App. 880, 883 (2) (b) (522 SE2d 284) (1999).
[10] Id.
[11] (Citation and punctuation omitted.) Id.

sentencing, and then raise the issue for the first time in an amended motion for a new trial.[12]

3. English contends the trial court erred in denying his motion to start the trial with a new panel of jurors. He argues that the superior court clerk lacked authority to excuse jurors from duty, that the court clerk excused jurors for reasons not recognized as valid under OCGA § 15-12-1, and that he was not given advance notice of the excusals and an opportunity to be heard. This enumeration presents no basis for reversal.

OCGA § 15-12-1 (a) (1) provides in relevant part:

Any person who shows that he or she will be engaged during his or her term of jury duty in [certain work] or who shows other good cause why he or she should be exempt from jury duty may be excused by the judge of the court to which he or she has been summoned or by some other person who has been duly appointed by order of the chief judge to excuse jurors. Such a person may exercise such authority only after the establishment by court order of guidelines governing excuses.

In this case, after the jury was struck, English made an oral objection to the array, stating that the court clerk lacked proper authority to excuse jurors and that, even if he was so authorized, he was not authorized to excuse jurors for the reasons that he did.

(a) *The court clerk's authority.* The trial court heard testimony that the chief judge did issue a standing written order in 2002 authorizing the clerk to excuse jurors. The trial judge stated in his place that he told the court clerk verbally that the chief judge's order and guidelines would continue in effect in the present case. The written order was made a part of the record. The order provides that the superior court clerks are authorized to excuse jurors summoned to service in certain specified circumstances, and sets forth procedures for exercising the authority. Therefore, the court clerk had the authority to excuse or defer jurors.

Contrary to English's argument, *Yates v. State*[13] does not require a different result. Nothing in that case states that a new written authorization order is required in each case being tried, or that such an order becomes invalid when the chief judge who signed it retires. Moreover, in *Yates*, the trial court had stated at the pre-trial hearing that the court clerk's authority to defer potential jurors did not extend

---

[12] See generally id. at 884 (2) (b).
[13] 274 Ga. 312, 314-316 (2) (553 SE2d 563) (2001).

to death penalty cases. The *Yates* case was a death penalty case. There was no such limitation or revocation of the clerk's authority by the trial court in this case. The substantial compliance with the statute here was sufficient,[14] and we do not find such disregard of the essential and substantial provisions of the statute as would vitiate the array.[15]

(b) *The clerk's grounds for excusals.* Nor do we find reversible error in the manner in which potential jurors were excused from service. At the pre-trial hearing, the clerk went through the list of excused jurors and gave reasons for his actions. There is absolutely no evidence that the excusals or deferrals in this case were allowed in such a manner as to alter, deliberately or inadvertently, the representative nature of the jury lists.[16] We decline to hold that any excuse which does not comply with OCGA § 15-12-1 vitiates the array.[17] A party has no vested interest in having any particular juror serve; he is only entitled to a legal and impartial jury.[18] We find no ground for reversal.

4. English contends trial counsel provided ineffective assistance because counsel failed to view before trial a videotaped police interview with one of the state's witnesses. According to English, the interview revealed information about what benefits the witness expected from police, and counsel could have used the interview to impeach the witness' credibility.

To prevail on a claim of ineffective assistance of counsel, an appellant must show deficient performance on the part of counsel and prejudice to his defense resulting from that deficient performance.[19] A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless it is clearly erroneous.[20] Here, English must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct.[21] The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel.[22] In light of the evidence of English's guilt, and the fact that the witness' trial testimony merely corroborated Scott's

---

[14] See *Lumpkin v. State*, 255 Ga. 363, 363-364 (1) (338 SE2d 431) (1986) (overruled on other grounds, *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998)).

[15] See *Hendrick v. State*, 257 Ga. 17, 18 (2) (354 SE2d 433) (1987).

[16] See *Franklin v. State*, 245 Ga. 141, 147 (1) (263 SE2d 666) (1980).

[17] Id.

[18] Id.

[19] *Borders v. State*, 285 Ga. App. 337, 341 (3) (646 SE2d 319) (2007).

[20] Id.

[21] *Gentry v. State*, 235 Ga. App. 328, 330-331 (4) (508 SE2d 671) (1998).

[22] Id.

trial testimony and the recorded conversations, it is unlikely that the outcome of the trial would have been different had counsel viewed the interview before trial.[23]

5. English contends the trial court erred in charging the entire solicitation statute, when the state only alleged in the indictment that he violated the statute in one manner. We disagree.

OCGA § 16-4-7 provides that a person commits the offense of solicitation if he "solicits, requests, commands, importunes, or otherwise attempts to cause the other person to [commit a felony]." The court charged the jury that a person commits the offense of criminal solicitation when he "solicits, requests, commands, urges or otherwise attempts to cause the other person to engage in conduct . . . constituting a felony."

The state alleged in the indictment that English committed the offense of criminal solicitation in that he did

unlawfully solicit another, to wit: Steven Scott, to commit a felony, to wit: Murder, in that the said accused did request that Steven Scott murder Joe Buice, a human being in exchange for payment, in violation of OCGA § 16-4-7.

The indictment contained the same language as to White.

According to English, by charging "the entire solicitation statute," the trial court permitted the jury to convict him "even if he merely requested or importuned" Scott to murder White and Buice.

It is generally not error to charge an entire Code section even though part of that section may be inapplicable to the allegations and the evidence.[24] Error arises, however, if the indictment specifies the commission of a crime by only one of several methods possible under the statute and a reasonable probability exists that the jury convicted the defendant of committing the offense in a manner not charged in the indictment.[25] No such reasonable probability exists here.

In this case, the trial court did not submit the case to the jury upon a theory entirely different from that claimed in the indictment.[26] The indictment used the words "solicit" and "request," as did the court in its charge to the jury. The trial court's charge to the jury, which also included "commands, urges or otherwise attempts," did

---

[23] See generally *Randolph v. State*, 225 Ga. App. 324 (484 SE2d 1) (1997).

[24] *Johnson v. State*, 245 Ga. App. 761, 762 (1) (538 SE2d 850) (2000).

[25] Id.

[26] *Walker v. State*, 146 Ga. App. 237, 244 (2) (246 SE2d 206) (1978).

not permit the prosecution to prove that a crime was committed in a wholly different manner than that specifically alleged in the indictment.[27]

Furthermore, the court instructed the jury that the state must prove the acts were completed as alleged in the indictment, and that the state bears the burden of proving every material allegation of the indictment beyond a reasonable doubt. The court further stated that if the jury believes, beyond a reasonable doubt, that the defendant committed the offense of criminal solicitation in the manner alleged in the indictment, it would be authorized to find him guilty. There is no reasonable probability that the jury was misled by the charge and convicted English of committing a crime in a manner not charged in the indictment.[28]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MARCH 19, 2008 — ▮▮▮▮▮▮▮▮▮

*Joseph S. Key,* for appellant.
*Richard G. Milam, District Attorney, Jason S. Johnston, Assistant District Attorney,* for appellee.

---

[27] See id. at 246 (3).
[28] See *Carolina v. State,* 276 Ga. App. 298, 304-305 (5) (b) (623 SE2d 151) (2005).